**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TECx GLOBAL EDUCATION ) <br> FOUNDATION, a Texas Corporation, ) <br> ) <br>      Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE WEST NOTTINGHAM ) <br> ACADEMY IN CECIL COUNTY, *et al.*, ) <br> ) <br>      Defendants. ) <br> ) | Civil Action No. 22-cv-00175-LKG <br><br> Dated:  July 26, 2023 |

**MEMORANDUM OPINION AND ORDER**

## I.  INTRODUCTION

This civil action arises out of the alleged breach of an asset purchase agreement for the sale of The West Nottingham Academy ("WNA") by and between Plaintiff, TECx Global Education Foundation ("TECx"), and WNA.  *See generally*, ECF No. 7.  In the complaint, TECx asserts claims for breach of contract, promissory estoppel, unjust enrichment and declaratory judgment against WNA.  ECF No. 7 ¶¶ 80-116, 202-08.  TECx also asserts claims for fraudulent inducement, conspiracy to commit fraudulent inducement, constructive fraud, fraud, conspiracy to commit fraud, fraudulent concealment, conspiracy to commit fraudulent concealment, negligent misrepresentation and tortious interference against Defendants WNA, Kendall Cameron and Virginia Kennedy.  *Id.* ¶¶ 117-201, 209-21.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 22, 30.  These motions are fully briefed.  *See* ECF Nos. 23, 30, 34, 37, 39, 44.  No hearing is necessary to resolve these motions.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** WNA and Kendall Cameron's motion to dismiss; (2) **GRANTS-in-PART** Virginia Kennedy's motion to dismiss; (3) **DISMISSES** Counts I and XII of the complaint **WITHOUT PREJUDICE**, with the exception of TECx's claims for breach of

contract and declaratory judgment against WNA based upon alleged breaches of the Exclusivity Period and failure to sell; and (4) **DISMISSES** Counts IV-XI and XIII of the complaint.  Fed. R. Civ. P. 12(b)(6).

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

This civil action arises out of the alleged breach of an asset purchase agreement ("APA") for the sale of WNA to TECx.  *See generally*, ECF No. 7.  In the complaint, TECx alleges that WNA breached the APA by: (1) providing TECx with false, incomplete and misleading financial information; (2) failing to provide TECx and its investors with timely access to WNA's data room to obtain financial information pertaining to WNA; (3) failing to provide TECx with access to WNA's key management personnel involved in operations, finance and admissions to allow TECx to conduct its due diligence; (4) providing North American Capital Markets LLC ("NAC") and its sole manager and CEO, Michael Browarnik, with access to additional WNA books, records, and other financial documentation with the purpose of having NAC or Mr. Browarnik potentially purchase WNA instead of TECx; (5) attempting to terminate TECx's ability to purchase WNA during the Exclusivity Period; (6) failing to operate WNA in its usual course of business by failing to maintain a competent Board of Directors that was able to execute WNA's obligations under the APA; and (7) failing to sell WNA to TECx.  *See* ECF No. 7 ¶¶ 82-98.  And so, TECx asserts the following claims in the complaint: (1) breach of the APA against WNA (Count I); (2) promissory estoppel against WNA (Count II); (3) unjust enrichment against WNA (Count III); (4) fraud in the inducement against all Defendants (Count IV); (5) conspiracy to commit fraud in the inducement against all Defendants (Count V); (6) constructive fraud against all Defendants (Count VI); (7) fraud against all Defendants (Count VII); (8) conspiracy to commit fraud against all Defendants (Count VIII); (9) fraudulent concealment against all Defendants (Count IX); (10) conspiracy to commit fraudulent concealment against all Defendants (Count X); (11) negligent misrepresentation against all Defendants (Count XI); (12) declaratory judgment against WNA (Count XII); and (13) tortious interference with business relations against all Defendants (Count XIII).  *See id.* at ¶¶ 80-221.

---

[1] The facts recited in this memorandum opinion are taken from the complaint; Defendants' respective motions to dismiss; and the memoranda in support thereof.  ECF Nos. 7, 22, 23, 30.

<u>The Parties</u>

TECx is a Texas-based 501(c)(3) corporation that purchases and builds schools to provide an innovative educational offering to students.  *Id.* ¶ 2.

WNA is the oldest private boarding and day school in the United States for grades 9-12 and the school is located in Colora, Maryland.  *Id.* ¶¶ 3, 4.

Kendall Cameron is WNA's current Vice President and the school's former President. *Id.* ¶ 5.  Dr. Virginia Kennedy is WNA's former Principal.  *Id.* ¶ 6.

<u>The APA</u>

As background, on December 8, 2020, TECx and WNA executed the APA to allow TECx to purchase WNA's real property estate and other assets for $8,000,000.  *Id.* ¶ 27; *see* ECF No. 23-1, Ex. 1, APA.[2]  Section 3.01 of the APA addresses closing and provides, in relevant part, that:

> Unless otherwise agreed to by the Parties . . . the consummation of the transactions contemplated by this Agreement (the 'Closing') shall take place on a mutually agreeable date on or before January 30, 2021[.]

ECF No. 23-1, Ex. 1, APA § 3.01.  Section 8.02 of the APA addresses exclusivity and this provision provides, in relevant part, that:

> Seller . . . agrees to provide Buyer exclusivity, in accordance with the following terms and conditions through the earlier of the Closing Date or January 30, 2021 ("the Exclusivity Period"). During the Exclusivity Period, Seller . . . will not, directly or indirectly, (i) take any actions to solicit, invite submission of or encourage proposals or offers from any other person or entity relating to any acquisition or purchase of all or any material portion of the Purchased Assets, any recapitalization, merger or business combination involving Seller, or any financing or joint venture involving Seller (any of the foregoing, an "Acquisition Proposal"), (ii) participate in any discussion or negotiations regarding an Acquisition Proposal with any person or entity other than Buyer and its Representative, or (iii) furnish any information or afford access to the properties, books, or records of Seller to any person or entity that has made, or that otherwise could reasonably be expected to make, and Acquisition Proposal other than Buyer[.]

---

[2] TECx and WNA previously executed a non-disclosure agreement ("NDA") in August of 2020 and a letter of intent ("LOI") on September 10, 2020.  ECF No. 7 at ¶¶ 16-19, 22-26.  The terms of those agreements are superseded by the APA.  *Id.*

*Id.* § 8.02.

TECx alleges that the APA requires that the parties undertake all contractually agreed upon activities set forth in the APA to close the transaction on or before January 30, 2021(the "Closing Date"). ECF No. 7 ¶ 28. TECx also alleges that the APA requires that WNA provide it with an exclusivity period through January 30, 2021 (the "Exclusivity Period"), during which WNA would not entertain other offers to purchase the school. *Id.* ¶ 29.

In this regard, TECx contends that the APA prohibits WNA from, among other things: "(i) solicit[ing], discuss[ing], or otherwise entertain[ing] any offers from any third-parties to purchase, or obtain financing for, WNA; and (ii) furnish[ing] a third-party with information pertaining to WNA's property, books, and records who could reasonably be expected to make an offer to purchase, or obtain financing for, WNA" during the Exclusivity Period. *Id.* at ¶ 29. TECx alleges that the parties subsequently agreed to extend the Closing Date and Exclusivity Period under the APA from January 30, 2021, to May 15, 2021. *Id.* ¶¶ 30-31.

<u>TECx's Allegations Regarding Interference With Its Financing</u>

On March 3, 2021, TECx entered into a letter of intent ("NAC LOI") with NAC, an investment banking firm, through its sole manager and CEO, Michael Browarnik, to finance the purchase of WNA. *See id.* ¶¶ 44-45. To obtain this financing, TECx paid NAC a $35,000 non-refundable underwriting fee. *Id.* ¶ 46.

TECx alleges that "Mr. Browarnik was provided with access to some of WNA's books, records, and financial documentation," as part of NAC's due diligence process to provide the financing for TECx's purchase of WNA. *Id.* ¶ 49. TECx also alleges that Defendants provided NAC and Mr. Browarnik with access to "additional information concerning WNA's books, record, and other financial documentation," and collaborated to have NAC or Mr. Browarnik purchase WNA. *Id.* ¶ 50.

In this regard, TECx alleges that, on April 1, 2021, Dr. Kennedy met with Mr. Browarnik about the potential purchase of WNA and also had telephone discussions with Mr. Browarnik to discuss the possibility of NAC and Mr. Browarnik purchasing WNA. *See id.* ¶¶ 51-53. TECx also alleges that it informed Defendants that such communications violated the APA and wrongfully interfered with its preexisting business relationship with NAC and Mr. Browarnik. *See id.* ¶ 54. And so, TECx alleges that WNA improperly attempted to terminate its ability to

purchase WNA during the Exclusivity Period, because it was unable to secure financing given that WNA was working directly with Mr. Browarnik for the purchase of WNA. *See id.* ¶¶ 56-59.

The Alleged Scheme

TECx also alleges that Defendants "employed a scheme" to continue to engage in discussions with Mr. Browarnik to have NAC and Mr. Browarnik potentially purchase WNA, "while giving the appearance that WNA was attempting to honor its obligations ow[ed] to TECx under the APA without the participation of Dr. Kennedy." *Id.* ¶ 60. In this regard, TECx alleges that, from approximately April 21, 2021, to May 13, 2021, Kendall Cameron set up a process wherein TECx would be able to perform its due diligence of WNA under the APA, without the knowledge of Virginia Kennedy. *Id.* ¶ 61.

TECx also alleges that, during this time period, Ms. Cameron indicated that TECx's purchase of WNA was proceeding under the APA. *Id.* ¶ 62. TECx further alleges WNA and Ms. Cameron also provided TECx with various financial information about WNA. *See id.* ¶¶ 34, 38, 62, 64, 67. But, TECx maintains that this information was "false, incomplete, and misleading." *Id.* ¶¶ 35, 39, 67.

TECx contends in this action that it was harmed by WNA's provision of this allegedly false, incomplete, and misleading financial information regarding WNA, because: (1) its costs to complete the real estate transaction contemplated by the APA increased; (2) it lost some of its preferred investors; an (3) it had to delay the closings for other school projects. *Id.* ¶ 72. And so, TECx seeks, among other things, specific performance of the APA, to obtain certain injunctive relief and to recover monetary damages from Defendants. *Id.* at Prayer for Relief.

### B. Procedural History

TECx commenced this civil action on January 24, 2022. ECF No. 1. On January 25, 2022, TECx filed a corrected complaint. ECF No. 7.

On April 22, 2022, Defendants WNA and Kendall Cameron filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 22, 23. On June 28, 2022, Defendant Virginia Kennedy filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF No. 30.

On July 25, 2022, TECx filed a consolidated response in opposition to Defendants' respective motions to dismiss.  ECF No. 34.  On August 15, 2022, Defendants WNA and Kendall Cameron filed a reply in support of their motion to dismiss.  ECF No. 37.  On August 16, 2022, Defendant Virginia Kennedy filed a reply in support of her motion to dismiss.  ECF No. 39.

On August 25, 2022, TECx filed a sur-reply by leave of the Court.  ECF No. 44.

Defendants' motions to dismiss having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombley*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B.   Breach Of Contract

In Maryland, the elements of a breach of contract claim include: (1) a contractual obligation and (2) a material breach of that obligation.  *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 174, 776 A.2d 645, 651 (2001).  And so, plaintiffs must plead that there existed a "contractual obligation, breach, and damages" to state a plausible breach of contract

claim. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at \*17 (D. Md. Mar. 23, 2018) (citations omitted).

### C.    Promissory Estoppel And Unjust Enrichment

Promissory estoppel in Maryland has four elements: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise. *VETcorp, Inc. v. Mid-Atl. Salt, LLC*, No. CCB-14-4025, 2018 WL 2416176, at \*5 (D. Md. May 29, 2018) (citing *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166, 674 A.2d 521, 532 (1996)).

A claim for unjust enrichment has three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit without the payment of its value. *See Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343, 352 (2007). An action for unjust enrichment cannot be maintained when the subject matter of the claim is governed by an express contract. *See Janusz v. Gilliam*, 404 Md. 524, 537, 947 A.2d 560, 567 (2008). But there are several exceptions to this rule under Maryland law, including: (1) if the plaintiff adduces evidence of fraud or bad faith on the part of the defendant, and (2) if the contract between the parties does not govern the entire subject matter of the claim. *Id.*, 947 A.2d 567-68 (citations omitted).

### D.    Rule 9(b) And Fraud Claims

Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To prove fraud, plaintiff must show the following by clear and convincing evidence: (1) the defendant made a false representation to the plaintiff; (2) the defendant knew the representation was false or made it with reckless indifference as to its truth; (3) the purpose of the misrepresentation was to defraud the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *Maryland Envtl. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002) (*quoting VF Corp. v. Wrexham Aviation.*, 350 Md. 693, 703, 715 A.2d 188, 192-93 (Md. 1998) (quotations omitted)).

Relevant to the pending motions to dismiss, Maryland courts have recognized that:

> Maryland differentiates between intentional breach [of a contract] and fraud with good reason. [Contracting parties know and expect that] [c]ontracts [may be] breached when companies change their business direction because of competitive market forces ... [Since] the parties anticipate potential breach, contracts [may] provide … liquidated damages and/or attorney's fees if breach occurs. The law provides a remedy for breach. Businesses will be hesitant to enter contracts at all if a breach, without evidence of pre-existing fraudulent intent, can expose them to punitive damage awards.

*First Union Nat. Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 160, 838 A.2d 404, 441 (2003).  And so, "[a] fraudulent pre-existing intent not to perform a promise … cannot be inferred from the failure to perform a promise alone," but "it may be considered with the subsequent conduct of the promisor and the other circumstances surrounding the transaction[.]" *Tufts v. Poore*, 219 Md. 1, 10, 147 A.2d 717, 722 (1959).

Maryland courts have also recognized that the tort of fraud "encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement."  *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003).  This Court has held that "the stringent requirements of Rule 9(b) are relaxed in the context of fraud by omission."  *Shaw v. Brown & Williamson Tobacco Co.*, 973 F. Supp. 539, 552 (D. Md. 1997) (emphasizing that omissions "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.") (citations omitted).  But, Maryland law does not recognize a general duty upon a party to a transaction to disclose facts to the other party.  *In re Wincopia Farms, LP*, 499 F. App'x 233, 236 (4th Cir. 2012) (citing *Sass*, 152 Md. App. at 432, 832 A.2d at 261).  And so, "to prevail on a … fraudulent concealment [claim], [p]laintiff must prove … (1) [d]efendant owed [p]laintiff a duty to disclose a material fact; (2) [d]efendant failed to disclose that fact; (3) [d]efendant intended to defraud or deceive [p]laintiff; (4) [p]laintiff took action in justifiable reliance on the concealment; and (5) [p]laintiff suffered damages … result[ing] [from] [d]efendant's concealment."  *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 628-29 (D. Md. 2003) (citing *Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999)).

To bring a conspiracy [to commit fraud] claim, "plaintiff must prove an unlawful agreement, the commission of an overt act in furtherance of the agreement, and that as a result,

… plaintiff suffered actual injury." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 128, 892 A.2d 479, 485 (2006) (citation omitted); *see also Hoffman v. Stamper*, 385 Md. 1, 24, 867 A.2d 276, 289 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221, 269 A.2d 815, 824 (1970) (A civil conspiracy under Maryland law is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff."). Such claims are "not … separate tort[s] capable of independently sustaining … damages in the absence of other tortious injur[ies] to … plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154, 916 A.2d 257, 284 (2007) (citation and internal quotations omitted). Because Maryland courts have recognized that direct evidence of a conspiracy is "almost never" available, *Daugherty v. Kessler*, 264 Md. 281, 292, 286 A.2d 95, 101 (1972), civil conspiracy claims "may be established by inference from the nature of the acts … the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design." *Windesheim v. Larocca*, 443 Md. 312, 347, 116 A.3d 954, 975 (2015) (citation omitted).

### E.    Negligent Misrepresentation

To maintain a negligent misrepresentation claim, a plaintiff must show, among other things, that the defendant had a duty to "protect [plaintiff] from injury." *CapitalSource Finance LLC v. Pittsfield Weaving Co., Inc.*, 571 F. Supp. 2d 668, 674 (D. Md. 2006) (quoting *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 653, 741 A.2d 1099, 1106 (Md. 1999) (internal quotations omitted)). In this regard, Maryland courts have held that:

> A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis.

*Id.* (quoting *Jones*, 356 Md. at 653, 741 A.2d at 1106) (internal quotations omitted)). Maryland courts have also held that:

> [W]hen the dispute is over the existence of [a] valid contractual obligation … or where … defendant has failed to recognize or undertake [a] contractual obligation … plaintiff is ordinarily limited to … breach of contract remed[ies]. It is when … defendant has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has

undertaken it in violation of the appropriate standard of care, that …
plaintiff may, in some circumstances, maintain a tort action.

*Mesmer v. Maryland Auto Ins. Fund*, 353 Md. 241, 254, 725 A.2d 1053, 1059 (1999).

### F.    Tortious Interference With Business Or Contractual Relations

Lastly, this Court has recognized that "the tort of intentional interference with contractual
or business relations is 'well-established in Maryland.'"  *State Farm Mut. Ins. Co. v. Slade
Healthcare, Inc*., 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan
Assocs.*, 334 Md. 287, 296, 639 A.2d 112, 116 (1994)).  This tort provides that "one not
privileged to do so who purposely induces or causes a third person not to perform a contract or
enter into or continue a business relation with another is liable for the harm caused
thereby." *United Rental Equip. Co. v. Potts & Callahan Contracting Co*., 231 Md. 552, 560, 191
A.2d 570, 574 (1963).

To prove a claim for intentional interference with contractual or business relations, a
plaintiff must show: "(1) intentional and willful acts; (2) calculated to cause damage to the
plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and
loss, without right or justifiable cause on the part of the defendants (which constitutes malice);
and (4) actual damage and loss resulting."  *Blondell v. Littlepage*, 413 Md. 96, 125, 991 A.2d 80,
97 (2010) (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628-29, 831 A.2d 49, 53
(2003)).  Maryland Courts have recognized that tortious interference has "two general
manifestations."  *Macklin*, 334 Md. at 297 639 A.2d at 117.  The interference either induces the
breach of an existing contract, or the interference maliciously or wrongfully interferes with
economic relationships in the absence of a breach of contract.  *Blondell*, 413 Md. at 96, 991 A.2d
at 97 (citation omitted).  Examples of the second manifestation of this tort include, "violence or
intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the
institution or threat of groundless civil suits or criminal prosecutions in bad faith."  *Alexander &
Alexander Inc. v. B. Dixon Evander & Assocs., Inc*., 336 Md. 635, 657, 650 A.2d 260, 271
(1994) (citation and internal quotations omitted).

"An essential element of a tortious interference claim is a showing that the actions
undertaken were wrongful."  *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 541 (D. Md.
2006) (quoting *Martello v. Blue Cross & Blue Shield of Md., Inc.*, 143 Md. App. 462, 478, 795

A.2d 185, 194 (2002) (internal quotations omitted)).  In this regard, "[w]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* (quoting *Carter v. Aramark Sports & Entm't Servs.*, 153 Md. App. 210, 241, 835 A.2d 262, 280 (2003), *cert. denied*, 380 Md. 231, 844 A.2d 231 (2004)).  In addition, to sustain a claim for tortious interference with prospective business relationship, a plaintiff must "identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Mixter v. Farmer*, 215 Md. App. 536, 549, 81 A.3d 631, 638 (2013) (quoting *Baron Fin. Corp.*, 471 F. Supp. at 546 (citing Maryland law)).  A plaintiff must also establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought and that any damages sought are a "natural, proximate and direct effect of the tortious misconduct." *Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander & Assocs., Inc.*, 339 Md. 41, 54-55, 660 A.2d 433, 439 (1995) (citations omitted).

## IV.   ANALYSIS

Defendants WNA and Kendall Cameron have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that: (1) TECx fails to state plausible claims for breach of contract and declaratory judgment, based upon the APA's Exclusivity Period, because TECx does not allege that the APA was properly amended to extend the Exclusivity Period; (2) TECx fails to state plausible claims for breach of contract and declaratory judgment, based upon false financial information or denied access to data or personnel, because the complaint lacks sufficient facts to show what WNA's contractual obligations were, how these obligations were breached, or how TECx was harmed in this regard; (3) TECx's claim for breach of the implied covenant of good faith and fair dealing is barred under Maryland law as a separate cause of action; (4) TECx fails to state plausible claims for promissory estoppel and unjust enrichment, because those claims are impermissibly based upon contractual promises; (5) TECx's fraud claims fail to meet the heightened pleading standards under Rule 9(b); (6) TECx fails to allege plausible claims for fraudulent inducement and conspiracy to commit fraudulent inducement, because TECx's reliance on the misrepresentations alleged in the complaint did not cause any injury; (7) TECx fails to state a claim for constructive fraud, because TECx fails to allege facts showing that a confidential relationship existed between the parties; (8) TECx fails to plausibly allege claims for fraudulent concealment and conspiracy to commit fraudulent concealment,

because these claims are duplicative of TECx's fraud and conspiracy to commit fraud claims; (9) TECx fails to state a plausible claim for negligent misrepresentation, because TECx has not established an independent basis for the duties of care alleged in the complaint; and (10) TECx fails to state a claim for tortious interference with business relations, because the complaint does not allege that WNA specifically intended to interfere with TECx's business relations, or that WNA committed any wrongful act. *See* ECF No. 23 at 11-27.

Defendant Virginia Kennedy has also moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that, among other things, TECx's claims against her are improperly pled, because she was neither a member of WNA's Board of Directors, nor a party to the APA. ECF No. 30-2 at 1, 2. [3]

TECx counters in its consolidated response in opposition that: (1) the complaint states plausible claims for breach of contract and declaratory judgment, because the complaint alleges that WNA agreed to extend the Exclusivity Period and Closing Date under the APA and contains sufficient factual allegations regarding the false financial information, denial of access to data and the alleged damages that it incurred; (2) the complaint alleges a plausible claim for breach of the implied covenant of good faith and fair dealing, because this claim is asserted in the alternative to its breach of contract claim; (3) the complaint contains sufficient factual allegations to support its claims for promissory estoppel and unjust enrichment, because there is a factual dispute in this case about whether the parties contractually agreed to extend the Exclusivity Period and the Closing Date; (4) the fraud claims in the complaint satisfy Rule 9(b); (5) the complaint alleges plausible claims for fraudulent inducement and conspiracy to commit fraudulent inducement, because TECx may ratify a contract instead of rescinding it under Maryland law; (6) the complaint also states a plausible claim for constructive fraud, because the complaint contains sufficient factual allegations to show that a confidential relationship existed between TECx and the Defendants; (7) the complaint states plausible claims for fraudulent concealment and conspiracy to commit fraudulent concealment, because these claims are not

---

[3] Dr. Kennedy adopts and incorporates the arguments of WNA and Kendall Cameron in support of her motion to dismiss. ECF No. 30-2 at 6-7. In addition, Dr. Kennedy argues that TECx fails to state plausible claims for fraudulent inducement, conspiracy to commit fraudulent inducement, constructive fraud, fraud, conspiracy to commit fraud, fraudulent concealment, conspiracy to commit fraudulent concealment, negligent misrepresentation and tortious interference with business relations against her in this case. *See id.* at 3-7.

duplicative; (8) the complaint states a plausible claim for negligent misrepresentation, because the alleged negligent conduct in this case does not arise out of contractual relationships; and (9) the complaint states a plausible claim for tortious interference with business relations, because there are sufficient factual allegations in the complaint to show that Defendants' conduct was directed at TECx's business relationship with NAC and Mr. Browarnik and that Defendants engaged in wrongful conduct. *See generally*, ECF No. 34.

Lastly, TECx argues that it has asserted plausible fraud claims against Dr. Kennedy, because she was "key personnel" involved with the APA and she is personally liable for her tortious conduct in her position as Head of School and as an agent of WNA. *Id.* at 36-41.

For the reasons discussed below, a careful reading of the complaint shows that TECx has alleged plausible claims for: (1) breach of contract and declaratory judgment, based upon the alleged breach of the APA's Exclusivity Period and failure to sell WNA to TECx; (2) promissory estoppel; and (3) unjust enrichment. But, TECx fails to allege plausible claims for breach of the implied covenant of good faith and fair dealing; fraudulent inducement; conspiracy to commit fraudulent inducement; fraud; conspiracy to commit fraud; constructive fraud; fraudulent concealment; conspiracy to commit fraudulent concealment; negligent misrepresentation; and tortious interference with business relations in this case. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART WNA and Kendall Cameron's motion to dismiss; (2) GRANTS-in-PART Virginia Kennedy's motion to dismiss; (3) DISMISSES Counts I and XII of the complaint WITHOUT PREJUDICE, with the exception of TECx's claims for breach of contract and declaratory judgment based upon alleged breaches of the Exclusivity Period and failure to sell; and (4) DISMISSES Counts IV-XI and XIII of the complaint. Fed. R. Civ. P. 12(b)(6).

### A.    The Court Grants-in-Part And Denies-in-Part Defendants' Motions To Dismiss TECx's Breach Of Contract Claims

#### 1.    TECx States Plausible Claims For Breach Of The APA's Exclusivity Period And The Obligation To Complete The Sale Of WNA

As an initial matter, the Court declines to dismiss TECx's claims for breach of contract, based upon the APA's Exclusivity Period and WNA's obligation to complete the sale of the school as set forth in Counts I and XII of the complaint, because there is a factual dispute in this case about whether the parties amended the APA to extend the contract's Exclusivity Period and

Closing Date.  In Count I of the complaint, TECx alleges that WNA breached the APA in several ways, by: (1) providing TECx with false, incomplete, and misleading financial information; (2) failing to provide TECx and its investors with timely access to WNA's data room to obtain financial information pertaining to WNA; (3) failing to provide TECx with access to WNA's key management personnel involved in operations, finance, and admissions to allow TECx to conduct its due diligence; (4) providing North American Capital and Mr. Browarnik with access to additional WNA books, records, and other financial documentation with the purpose of having North American Capital or Mr. Browarnik potentially purchase WNA instead of TECx; (5) attempting to terminate TECx's ability to purchase WNA during the Exclusivity Period; (6) failing to operate the school in its usual course of business by failing to maintain a competent Board of Directors that was able to execute WNA's obligations under the APA; and (7) failing to sell WNA to TECx as required under the APA.  *See* ECF No. 7 ¶¶ 82-98.  TECx also alleges that WNA breached the implied covenant of good faith and fair dealing based upon this same conduct.  *See id.*

Defendants argue that the Court should dismiss TECx's breach of contract claims, based upon the APA's Exclusivity Period and WNA's failure to complete the sale of the school, because TECx does not allege that the parties executed a written and signed amendment to the APA to extend the Exclusivity Period and the Closing Date.  ECF No. 23 at 11.  And so, Defendants argue that TECx cannot pursue its breach of contract claims based upon any conduct that occurred after January 30, 2021, because the parties did not enter into a valid agreement to extend the Exclusivity Period beyond that date.  *Id.*

A careful reading of the complaint shows that TECx alleges in the complaint that "the parties agreed to extend the Exclusivity Period from January 30, 3021, to May 15, 2021," after executing the APA.  ECF No. 7 ¶¶ 30-31.  While Defendants correctly observe that TECx does not specifically allege that the parties entered into a *written* agreement to extend the Exclusivity Period, as required under Section 13.08 of the APA, TECx has produced evidence to suggest that the parties, nonetheless, agreed to this modification without executing a written agreement.  Notably, TECx has provided declarations from its President, Alex Greystoke, and its former legal counsel, Allan Lowy, and several related documents, to show that: (1) TECx had several discussions with WNA about extending the Exclusivity Period and Closing Date under the APA in January and February of 2021; (2) on March 4, 2021, the parties participated in a conference

call during which they agreed to extend the Exclusivity Period and Closing Date to May 15, 2021; and (3) the parties agreed to waive the APA's formal written amendment requirement. *See* ECF Nos. 44-1, 44-2. Given this evidence, the Court concludes that there is a genuine factual dispute in this case about whether the parties agreed to extend the APA's Exclusivity Period to May 15, 2021. And so, when read in the light most favorable to TECx, the complaint alleges sufficient facts to state a plausible breach of contract claim based upon the APA's Exclusivity Period, and the failure to complete the sale of WNA, to preclude dismissal of these claims at this early stage of this litigation.

Defendants' argument that TECx's breach of contract claims, based upon the Exclusivity Period and WNA's failure to complete the sale contemplated by the APA are precluded under Maryland's statute of frauds, is also unpersuasive. Maryland's statute of frauds provides, in relevant part, that:

> No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged . . .

Md. Code Ann., Real Prop. § 5-104. But, as Defendants acknowledge, the doctrine of part performance operates as an exception to the statute of frauds and a party may not assert the statute of frauds as a defense "when the performance clearly indicates the existence of the oral contract." *Harrington v. M.C. Fuhrman & Assocs., LLC*, Civ. No. WDQ–10–1258, 2011 WL 90234, at *2 (D. Md. Jan. 10, 2011) (quoting *Campbell v. Indymac Bank, FSB*, No. CIV. A. CCB-09-3182, 2010 WL 419387, at *2 (D. Md. Jan. 29, 2010) (internal citations omitted)); *see also Plana v. Shoresales LLC*, 2003 WL 21805290, No. Civ. JFM-03-1227, at *4 (D. Md. July 14, 2003) ("[P]romissory estoppel … remove[s] [a] case from the statute of frauds.") (citation omitted).

In this case, TECx alleges sufficient facts in the complaint to show that the parties continued to take steps towards completing the sale of WNA after the original January 30, 2021, Closing Date, to preclude dismissal of its breach of contract claims based upon the Exclusivity Period and failure to complete the sale. For example, the complaint alleges that, on March 3, 2021, TECx informed WNA that it entered into the NAC LOI to secure the financing for this transaction and that the parties proceeded towards the May, 15, 2021, closing date on that basis. *Id.* ¶ 47. TECx also alleges in the complaint that WNA provided it with due diligence

documents in April and May of 2021, well after the January 30, 2021, Closing Date had passed. *Id.* ¶¶ 61, 64, 67. Given these allegations, the Court is satisfied that TECx has sufficiently alleged facts to plausibly state a claim that WNA breached the APA by failing to honor the Exclusivity Period and failing to complete the sale contemplated by that agreement.  And so, the Court DENIES Defendants' motion to dismiss these claims.

### 2.    TECx's Remaining Breach Of Contract Claims Are Not Plausible

Defendants are on firmer ground in arguing that the Court should dismiss the remaining of the breach of contract claims in Count I of the complaint.  The Court agrees with Defendants that the complaint lacks sufficient factual allegations to support TECx's claims that Defendants breached the APA by: (1) providing TECx with false, incomplete and misleading financial information; (2) failing to provide TECx and its investors with timely access to WNA's data room to obtain financial information pertaining to WNA; (3) failing to provide TECx with access to WNA's key management personnel involved in operations, finance, and admissions to allow TECx to conduct its due diligence; and (4) failing to operate the School in its usual course of business by failing to maintain a competent Board of Directors that was able to execute WNA's obligations under the APA.  ECF No. 7 ¶¶ 82, 84, 86, 92.

Notably, the complaint is devoid of facts to show how the information provided to TECx by Defendants was "false, incomplete, and misleading," or to show that Defendants failed to: (1) provide timely access to WNA's data room; (2) provide TECx with access to WNA's key management personnel; and (3) operate WNA to maintain a competent Board of Directors to support these claims.  *See Nemet Chevrolet*, 591 F.3d at 255 (The complaint must contain more than . . . "bare assertions devoid of further factual enhancement.")  TECx's alternative claim for breach of the implied covenant of good faith and fair dealing in Count I of the complaint fails for these same reasons with regards to this alleged conduct.  TECx requests that the Court allow it to amend the complaint to address these deficiencies.  ECF No. 34 at 57.  And so, the Court DISMISSES Count I of the complaint WITHOUT PREJUDICE, with the exception of TECx's breach of contract claims based upon the APA's Exclusivity Period and WNA's failure to complete the sale.

To the extent that TECx's declaratory judgment claim in Count XII of the complaint is based upon WNA's alleged breach of the APA by failing to: (1) provide timely access to WNA's data room; (2) provide TECx with access to WNA's key management personnel; and (3) operate

WNA to maintain a competent Board of Directors, the Court also DISMISSES these claims WITHOUT PREJUDICE.  Because TECx has properly alleged a claim for breach of contract based upon breaches of the Exclusivity Period and failure to sell WNA, TECx can maintain its declaratory judgment claim on this basis.

### B.    TECx States Plausible Claims For Promissory Estoppel And Unjust Enrichment

Turning to Counts II and III of the complaint, Defendants argue without persuasion that TECx fails to state plausible claims for promissory estoppel and unjust enrichment in this matter, because these quasi-contract claims are improperly based upon contractual promises.  ECF No. 23 at 18-19; ECF No. 37 at 15-16.  In Counts II and III of the complaint, TECx alleges claims for promissory estoppel and unjust enrichment based upon WNA's refusal to sell the school to TECx for $8,000,000.  ECF No. 7 ¶¶ 108-16.

As Defendants correctly observe, TECx may not recover under both contract and quasi-contract theories under Maryland law.  *See Janusz*, 404 Md. at 535, 947 A.2d at 567 (citations omitted).  But, TECx is not barred from pleading contract and quasi-contract theories in the alternative in the complaint, "where the existence of a contract concerning the subject matter is in dispute.'"  *Chevron U.S.A. Inc. v. Apex Oil Co. Inc.*, 113 F. Supp. 3d 807, 822 (D. Md. 2015) (citation omitted); *see also J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 609 (D. Md. 2015) ("A party may bring an action seeking both breach of contract and promissory estoppel because if the court finds that the contract is unenforceable it may nonetheless provide relief based on detrimental reliance.") (citation omitted).  As discussed above, there is a dispute in this case about whether the parties agreed to extend the Exclusivity Period (and the Closing Date) under the APA, and thereby entered into a binding contractual agreement to abide by the exclusivity provisions in the APA until May 15, 2021.  Given this, TECx may pursue its quasi-contract theories of equitable estoppel and unjust enrichment as alternate theories of recovery in this case.  And so, the Court declines to dismiss Counts II and III of the complaint.

### C.   TECx Fails To State Plausible Claims For Fraudulent Inducement And Conspiracy To Commit Fraudulent Inducement

While the Court declines to dismiss TECx's quasi-contract claims in this matter, a careful reading of the complaint makes clear that the Court should dismiss TECx's fraudulent

inducement and conspiracy to commit fraudulent inducement claims set forth in Counts IV and V of the complaint, because the complaint lacks facts to show that Defendants' alleged efforts to induce TECx into executing the APA caused TECx any detriment.  To prevail on its fraudulent inducement claims, TECx must show, among other things, that it relied on Defendants' misrepresentations and suffered compensable injury resulting from the misrepresentation. *Maryland Envtl. Trust*, 370 Md. at 97, 803 A.2d at 516 (quoting *VF Corp.*, 350 Md. at 703, 715 A.2d at 192-93 (quotations omitted)); *see also Brown v. Board of Educ. Of Prince George's County, Maryland*, DLB-20-2632, 2022 WL 888424, at *5 (D. Md. Mar. 25, 2022).

In the complaint, TECx alleges that Defendants fraudulently induced it to enter into and execute the APA, by: (1) "falsely represent[ing] to TECx that they would provide TECx with WNA's complete and accurate financial information … [for] due diligence" and (2) "falsely represent[ing] … that TECx would be permitted to obtain third-party financing[.]"  ECF No. 7 ¶¶ 118-19.  As relief, TECx seeks "to ratify the APA and [the] enforcement of the same." *Id.* ¶ 127.

Given that the complaint makes clear that TECx seeks to *enforce* the APA, notwithstanding Defendants' alleged false representations, the Court shares Defendants' concern that there are no facts in the complaint to show that TECx relied upon their alleged misrepresentations and was fraudulently induced into executing the APA.  And so, the Court also DISMISSES TECx's fraudulent inducement and conspiracy to commit fraudulent inducement claims in Counts IV and V of the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

### D.  TECx Fails To State A Plausible Constructive Fraud Claim

TECx's constructive fraud claim is also problematic.  Maryland courts have held that constructive fraud is "[a] breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests."  *St. Annes Dev'mt Co., LLC v. Trabich*, 737 F. Supp. 2d 517, 530 (D. Md. 2010) (quoting *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 236 n.11, 652 A.2d 1117, 1127 n.11 (1995)).  Given this, constructive fraud "usually arises from a breach of duty whe[n] a relationship of trust and confidence exists." *St. Annes Dev'mt*, 737 F. Supp. 2d at 530 (quoting *Crawford v. Mindel*, 57 Md. App. 111, 120, 469 A.2d 454, 459 (1984)).  And so, TECx must establish the existence of a trusting and confidential relationship between itself and Defendants to prevail on its constructive fraud claim.

In this regard, business relationships are not considered to be confidential relationships

unless "[c]ertain factors above and beyond a typical business relationship exist." *St. Annes Dev'mt*, 737 F. Supp. 2d at 531 (quoting *Brass Metal Prods. v. E–J Enters.*, 189 Md. App. 310, 357, 984 A.2d 361, 388 (2009)). And so, "something apart from the transaction between the parties is required" to establish the existence of a confidential relationship. *Brass Metal Prods.*, 189 Md. App. at 357, 984 A.2d at 389 (citing *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 443 (Tex. App. 2002)).

In this case, the complaint fails to adequately allege facts to show that a special relationship existed between TECx and Defendants to support TECx's constructive fraud claim. As discussed above, the complaint contains allegations that Defendants made false misrepresentations and fraudulently induced TECx to execute the APA. *See* ECF No. 7 ¶¶ 118-19, 140-41. But these allegations do not show that TECx and Defendants had a trusting and confidential relationship. Rather, the allegations in the complaint establish that the parties entered into an arm's length business relationship for the purpose of selling WNA. *See id.* ¶¶ 11-12. Because the complaint lacks factual allegations to show that TECx and Defendants had a trusting and confidential relationship before the parties entered into the APA, the Court agrees with Defendants that TECx fails to state a plausible constructive fraud claim in the complaint. And so, the Court also GRANTS Defendants' motions to dismiss this claim.

The complaint similarly fails to allege an existing confidential relationship between TECx, Dr. Kennedy and Ms. Cameron. *See generally*, ECF No. 7 ¶¶ 136-48. And so, the Court also GRANTS their motions to dismiss TECx's constructive fraud claim.

### E. TECx's Remaining Fraud Claims Do Not Satisfy Rule 9(b)

The Court must also DISMISS TECx's remaining claims against Defendants for fraud, conspiracy to commit fraud, fraudulent concealment and conspiracy to commit fraudulent concealment, in Counts VII-X of the complaint, because the complaint lacks sufficient information to support these claims under Rule 9(b). *See generally*, ECF No. 7 ¶¶ 149-86. In Counts VII-X, TECx asserts claims against all Defendants for fraud (Count VII); conspiracy to commit fraud (Count VIII); fraudulent concealment (Count IX); and conspiracy to commit fraudulent concealment (Count X). *Id.* Rule 9(b) requires that TECx state these claims "with particularity." Fed. R. Civ. P. 9(b). TECx has not met this obligation in the complaint for several reasons.

First, TECx fails to provide any details about why it alleges Defendants provided it with false and misleading information during the parties' negotiations to complete the sale of WNA. While TECx generally alleges that Defendants "provided financial information … that was false, incomplete, and misleading," TECx fails to identify the specific information that it maintains is false or misleading.  *See* ECF No. 7 ¶¶ 150-55.

TECx also generally alleges in the complaint that Defendants "falsely represented that [they] would assist … [with] financing to purchase the [s]chool[.]"  *Id.* ¶ 154.  But, again, the complaint lacks detail about what misrepresentations Defendants allegedly made about assisting with financing, when Defendants made these misrepresentations and how the alleged misrepresentations about financing harmed TECx.  *See id.* ¶¶ 155-60.

Given this, the allegations in the complaint to support TECx's fraud claims are not alleged with sufficient particularity to afford Defendants notice of these claims.  And so, the Court DISMISSES these claims pursuant to Fed. R. Civ. P. 9(b).

### F.  TECx Fails To State A Plausible Claims For Negligent Misrepresentation And Tortious Interference

As a final matter, TECx also fails to state plausible claims for negligent misrepresentation and tortious interference with a business relationship in Counts XI and XIII of the complaint.  To prevail on its claim for negligent misrepresentation, TECx must show, among other things, that the Defendants had a duty to protect it from injury.  *CapitalSource Finance LLC*, 571 F. Supp. 2d at 674 (quoting *Jones*, 356 Md. at 653, 741 A.2d at 1106 (quotations omitted)).  Relevant here, Maryland courts have held that:

> A contractual obligation, by itself, does not create a tort duty.  Instead, the duty giving rise to a tort action must have some independent basis.

*Id.* (quoting *Jones*, 741 A.2d at 1106) (quotations omitted)).  Maryland courts have also held that:

> [W]hen the dispute is over the existence of [a] valid contractual obligation … or where … defendant has failed to recognize or undertake [a] contractual obligation … plaintiff is ordinarily limited to … breach of contract remed[ies].  It is when … defendant has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, that … plaintiff may, in some circumstances, maintain a tort action.

*Mesmer*, 353 Md. at 254, 725 A.2d at 1059.  And so, Maryland courts have held that a claim for negligent misrepresentation is not proper when the only relationship between the parties is contractual, both parties are sophisticated and the contract does not itself create an express duty of care in making representations.  *CapitalSource Finance LLC*, 571 F. Supp. 2d at 674.

In this case, the complaint makes clear that the only relationship between TECx and Defendants arose from the APA.  *See generally*, ECF No. 7 ¶¶ 188-201.  In Count XI of the complaint, TECx alleges that the Defendants had a duty under the terms of the APA to provide TECx with complete, accurate and truthful financial information about WNA's student enrollment data, budget, and balance sheets.  *Id.* ¶¶ 189, 191, 193.  Given this, TECx appears to acknowledge that the only relationship between the parties in this case is a contractual one. TECx neither disputes that the parties to the APA are sophisticated, nor points to any language in the APA that expressly creates a duty of care on the part of Defendants to provide truthful financial information about WNA.  *Id.* ¶¶ 189-90; ECF No. 34 at 29-30.

TECx's reliance upon its letter of intent with NAC, to show that Defendants owed a duty to assist TECx in obtaining financing, also lacks merit.  It is undisputed that TECx entered into a letter of intent with NAC and Michael Browarnik to finance the purchase of WNA.  ECF No. 7 ¶¶ 44-45.  It is also undisputed that Defendants are not a party to this agreement.  ECF No. 34 at 29.  Given this, the NAC LOI cannot form the basis for establishing a duty to assist with financing, as required to state a plausible negligent misrepresentation claim against Defendants.[4] And so, the Court must also DISMISS this claim.

Lastly, TECx similarly fails to state a plausible tortious interference with business relations claim in this matter, because the complaint is devoid of facts to show that Defendants engaged in a wrongful act.  Under Maryland law, "[a]n essential element of a tortious interference claim is a showing that the actions undertaken were wrongful."  *Baron Fin. Corp.*,

---

[4] TECx's argument that WNA's duty of care arose from its alleged knowledge that TECx would rely upon the information that it supplied as part of TECx's due diligence investigation is also unpersuasive. Count XI of the complaint does not contain any factual allegations to support this argument.  ECF No. 7 ¶¶ 187-201.  A careful reading of the complaint also makes clear that such a duty would be attributed to any obligation that WNA had to assist TECx in conducting due diligence under the terms of the APA. *See id.* ¶¶ 28, 34, 36, 38, 62, 82-85.

471 F. Supp. 2d at 541 (quoting *Martello*, 143 Md. App. at 478, 795 A.2d at 194 (2002) (internal quotations omitted)).  In this regard, this Court has held that "[w]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* (quoting *Carter*, 153 Md. App. at 241, 835 A.2d at 280 (2003), *cert. denied*, 380 Md. 231, 844 A.2d 231 (2004)).

In this case, the complaint fails to allege any facts about a wrongful act on the part of the Defendants that resulted in interference with TECx's business relationship with NAC.  *See* ECF No. 7 ¶¶ 213-18 (alleging generally that Defendants provided NAC and Mr. Browarnik with access to WNA's books, records, and financial documentation to have NAC or Mr. Browarnik potentially purchase WNA).  Such allegations are not sufficient to show that Defendants engaged in a wrongful act to plausibly allege a tortious interference with business claim.  *See Baron Fin. Corp.*, 471 F. Supp. 2d at 541 (quoting *Carter*, 153 Md. App. at 241, 835 A.2d at 280 (2003), *cert. denied*, 380 Md. 231, 844 A.2d 231 (2004)) ("Wrongful or unlawful acts include common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'").  And so, the Court must also dismiss Count XIII of the complaint.

## V.    CONCLUSION

In sum, a careful reading of the complaint shows that TECx has alleged plausible claims for: (1) breach of contract and declaratory judgment, based upon the alleged breach of the APA's Exclusivity Period and failure to sell WNA; (2) promissory estoppel; and (3) unjust enrichment. But, TECx fails to allege plausible claims for breach of the implied covenant of good faith and fair dealing; fraudulent inducement; conspiracy to commit fraudulent inducement; fraud; conspiracy to commit fraud; constructive fraud; fraudulent concealment; conspiracy to commit fraudulent concealment; negligent misrepresentation; and tortious interference with business relations in this case.

And so, for the foregoing reasons, the Court:

1.    **GRANTS-in-PART** and **DENIES-in-PART** WNA and Kendall Cameron's motion to dismiss;

2. **GRANTS-in-PART** Virginia Kennedy's motion to dismiss;

3. **DISMISSES WITHOUT PREJUDICE** Counts I and XII of the complaint, with the exception of TECx's claims for breach of contract and declaratory judgment based upon breaches of the Exclusivity Period and failure to sell WNA; and

4. **DISMISSES** Counts IV-XI, and XIII of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
